IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMERICAN HONDA MOTOR CO., INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-24-165-D |
| M&N DEALERSHIPS VI, LLC, d/b/a 6TH AVENUE HONDA, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Defendant M&N Dealerships VI, LLC's ("M&N") Motion to Dismiss or Stay [Doc. No. 10]. Plaintiff American Honda Motor Co., Inc. ("American Honda") filed a response in opposition [Doc. No. 11], to which M&N replied [Doc. No. 15]. The matter is fully briefed and at issue.

### BACKGROUND

**I.     The parties**

Defendant M&N is a Stillwater, Oklahoma-based motor vehicle dealer that does business at two adjacent facilities—one a Honda dealership ("6th Avenue Honda") and the other both a Hyundai dealership and Chrysler Dodge Jeep Ram dealership ("Barry Sanders Supercenter"). Relevant for purposes of the instant Motion, M&N—through 6th Avenue Honda—is an authorized Honda motor vehicle dealership.

Plaintiff American Honda is a corporation that distributes new Honda motor vehicles, genuine parts, and accessories in the United States through an authorized dealer network. Because Oklahoma law prohibits vehicle distributors from selling new vehicles

directly to consumers, American Honda relies on a network of authorized dealerships—such as 6th Avenue Honda—to sell and service Honda products throughout the United States.

## II. The Dealer Agreement and Oklahoma statutory law

As part of the aforementioned authorized dealership framework, American Honda and M&N entered into a Honda Dealer Sales and Service Agreement ("Dealer Agreement") setting forth the agreement, terms, and conditions between the parties. Generally, the Dealer Agreement prohibits any change to M&N's ownership or certain management-level employees without American Honda's prior written approval. Further, should M&N decide to transfer the ownership interest or assets of 6th Avenue Honda to a third party, the Dealer Agreement gives American Honda a right of first refusal or option to purchase the ownership interest or assets of the dealership on substantially the same terms and conditions as agreed to by M&N and the third party.

In addition to the Dealer Agreement, Okla. Stat. tit. 47, §§ 561 *et seq.* governs auto dealers, distributors, and manufacturers in Oklahoma. Of particular importance in this dispute, § 565(B) provides as follows:

> B. Notwithstanding the terms of any franchise agreement, in the event of a proposed sale or transfer of a dealership, the manufacturer or distributor shall be permitted to exercise a right of first refusal to acquire the assets or ownership interest of the dealer of the new motor vehicle dealership, if such sale or transfer is conditioned upon the manufacturer or dealer entering into a dealer agreement with the proposed new owner or transferee, only if all the following requirements are met:
>
> 1. To exercise its right of first refusal, the factory must notify the new motor vehicle dealer in writing within sixty (60) days of receipt of the completed proposal for the proposed sale transfer;

2. The exercise of the right of first refusal will result in the new motor vehicle dealer and the owner of the dealership receiving the same or greater consideration as they have contracted to receive in connection with the proposed change of ownership or transfer;

3. The proposed sale or transfer of the dealership does not involve the transfer or sale to a member or members of the family of one or more dealer owners, or to a qualified manager or a partnership or corporation controlled by such persons; and

4. The factory agrees to pay the reasonable expenses, including attorney fees which do not exceed the usual, customary, and reasonable fees charged for similar work done for other clients incurred by the proposed new owner and transferee prior to the exercise by the factory of its right of first refusal in negotiating and implementing the contract for the proposed sale or transfer of the dealership or dealership assets. Notwithstanding the foregoing, no payment of expenses and attorney fees shall be required if the proposed new dealer or transferee has not submitted or caused to be submitted an accounting of those expenses within thirty (30) days of receipt of the written request of the factory for such an accounting. The accounting may be requested by a factory before exercising its right of first refusal.

Okla. Stat. tit. 47, § 565(B).

### III.    The initial dispute, this case, and the OMVC proceeding

In June 2023, M&N received an unsolicited offer to purchase all three of its dealerships (*i.e.*, 6th Avenue Honda and Barry Sanders Supercenter), along with the associated real estate. Although M&N did not have the dealerships listed for sale, it accepted the offer based on the desire to entirely exit the market. In other words, M&N wished to sell all three of its dealerships, or none at all. With the understanding that it was selling all three dealerships, M&N and the third-party buyer executed a Dealer Asset Purchase Agreement (the "APA") and Real Estate Purchase Agreement (the "REPA").

3

Shortly thereafter, American Honda demanded that M&N separate 6th Avenue Honda into its own standalone purchase agreement, and M&N agreed to do so.[1] M&N and the buyer executed a new 6th Avenue Honda-specific APA and REPA (the "Honda APA" and "Honda REPA"). But M&N maintained its position that it only wished to proceed with selling its dealerships on an all-or-nothing basis. In other words, although M&N agreed to separate 6th Avenue Honda into the standalone Honda APA and Honda REPA, it would only proceed with selling 6th Avenue Honda if it also sold Barry Sanders Supercenter. Therefore, the Honda APA included a provision that, in essence, made the closing of the 6th Avenue Honda transaction contingent on the closing of the Barry Sanders Supercenter transaction.[2]

After M&N and the third-party buyer executed a First Amendment to the Honda APA, a First Amendment to the Honda REPA, and a Second Amendment to the Honda REPA, American Honda gave notice, pursuant to § 19 of the Dealer Agreement and Okla. Stat. tit. 47, § 565(B), that it was exercising its right of first refusal to purchase 6th Avenue Honda on substantially the same terms and conditions set forth in the First Amended Honda APA and the Second Amended Honda REPA.

After receiving notice that American Honda intended to exercise its right of first refusal, M&N, relying on the contractual provision making closing of the 6th Avenue

---

[1] American Honda maintains that the first iteration of the APA and REPA "prevented [it] from ascertaining the terms of the proposed sale of the dealership and related real estate, and impaired [its] ability to exercise its contractual and statutory rights, including its right of first refusal." Compl. [Doc. No. 1], ¶ 14.

[2] American Honda refers to this provision as a "poison pill" intended to "undermine American Honda's right of first refusal . . . ." *Id.*, ¶ 16.

Honda transaction contingent on closing of the Barry Sanders Supercenter transaction, refused to separately sell 6th Avenue Honda while continuing to own and operate Barry Sanders Supercenter. M&N now has none of its three dealerships listed for sale and has informed American Honda that it wishes to continue as the Honda dealership in the Stillwater market.[3]

On February 13, 2024, American Honda filed this action seeking a declaratory judgment regarding the parties' respective rights and duties under the Dealer Agreement and Okla. Stat. tit. 47, § 565(B). American Honda also brings two breach of contract claims—one seeking specific performance pursuant to the Dealer Agreement and the other seeking money damages "in the amount owed to Buyer for expense reimbursement."

On March 5, 2024, M&N filed its Complaint[4] with the Oklahoma Motor Vehicle Commission (the "OMVC proceeding"), in which it asks the OMVC to enjoin American Honda from exercising its right of first refusal. On March 12, 2024, M&N filed the instant Motion.

## DISCUSSION

In its Motion, M&N invokes three bases for the Court to abstain from exercising jurisdiction over this case. First, M&N argues that the Court should dismiss this case

---

[3] M&N claims "counsel for the parties were in discussions regarding the issues long before either case was filed." M&N Mot. at 12. Therefore, M&N continues, its counsel asked American Honda's counsel to "give him the courtesy of notice prior to filing any suit at which time [the issues raised in the instant Motion, including the proper forum for the dispute] could have been addressed." *Id.* But, according to M&N, American Honda's counsel did not provide such notice. *See id.*

[4] M&N's as-filed OMVC Complaint is attached to the instant Motion as Exhibit 1.

5

pursuant to the *Burford* abstention doctrine, which the Tenth Circuit has summarized as follows:

> Under the Burford abstention doctrine, federal courts must decline to interfere with the proceedings of state administrative agencies when the court is sitting in equity, timely and adequate state-court review is available, and either "there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" or "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Wildgrass Oil and Gas Comm. v. Colo.*, 843 F. App'x 120, 122 (10th Cir. 2021) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)).

Second, and in the alternative to dismissal under *Burford*, M&N argues that the Court should stay this case pursuant to the *Colorado River* abstention doctrine. Under *Colorado River Conservation Dist. v. United States*, 424 U.S. 800 (1976), a federal court may abstain from exercising jurisdiction when there are "parallel state proceedings" and "exceptional circumstances" warrant abstention. *See Northstar Mgmt., Inc. v. Vorel*, No. CIV-19-260-SLP, 2022 WL 20814864, at *2 (W.D. Okla. Dec. 7, 2022).

Third, and in the alternative to a stay under *Colorado River*, M&N asks the Court to exercise its inherent discretion to stay this case pending final resolution of the OMVC proceeding. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (recognizing that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *see also Cantu Servs., Inc. v. Brown*, No. CIV-15-1210-W, 2016 WL 11248521, at *4 n.7 (W.D. Okla. Feb. 10, 2016) (quoting *Landis* and finding that, even

if *Colorado River* abstention were inappropriate, the court would stay proceedings pursuant to its inherent and discretionary power).

Because the Court concludes a stay is warranted pursuant to *Colorado River* or, alternatively, pursuant to its inherent and discretionary authority, the Court does not reach M&N's *Burford*-related arguments.

I.  **A stay of this case is warranted pursuant to the *Colorado River* abstention doctrine.**

Under the Supreme Court's decision in *Colorado River*, federal courts have the power to refrain from hearing a case that is duplicative of a pending state proceeding. *Colorado River* "rests on a desire for judicial economy, not from constitutional concerns about federal-state comity, and requires a determination that there exist *exceptional circumstances, the clearest of justifications,* that can suffice under *Colorado River* to justify the surrender of jurisdiction." *Meyer Nat. Foods, LLC v. C.R. Freeman*, No. CIV–12–1329–D, 2013 WL 5460823, at *4 (W.D. Okla. Sept. 30, 2013) (quoting *Rienhardt v. Kelly,* 164 F.3d 1296, 1302 (10th Cir. 1999)) (emphasis in original and internal quotation marks omitted). At bottom, "*Colorado River* concerns itself with efficiency and economy," with the ultimate goal being the preservation of judicial resources. *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013).

A proper *Colorado River* analysis proceeds in two steps. First, the Court must determine whether the state and federal proceedings are parallel. Second, if the Court finds the proceedings are parallel, it must then consider whether "exceptional circumstances" warrant abstention. The Court addresses each step in turn.

### A. The OMVC proceeding and this case are parallel.

Proceedings are parallel if they involve "substantially the same parties" and "substantially the same issues." *CNSP, Inc. v. City of Santa Fe*, 753 F. App'x 584, 588 (10th Cir. 2018) (quoting *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994)). Indeed, "[p]roceedings may be parallel even if they 'are far from identical.'" *Id.* at 589 (quoting *D.A. Osguthorpe Family P'ship*, 705 F.3d at 1233).

M&N contends that the OMVC proceeding and this case are parallel because they "both seek an interpretation and application of Okla. Stat. tit. 47, § 565(B), and involve the exact same facts." *See* M&N Mot. at 11.[5] American Honda does not take issue with M&N's framing of the two proceedings. Instead, American Honda contends that, because the OMVC proceeding is before a state *administrative or regulatory body* as opposed to a state *court*, the OMVC proceeding and this case cannot be parallel. *See* American Honda Resp. at 17-18.

Upon consideration, the Court finds that the OMVC proceeding and this case are parallel. American Honda relies on *BNSF Railway Co. v. City of Moore, Okla.*, in which the district court concluded that a proceeding before a state regulatory body and the case before it were not parallel. 536 F. Supp. 3d 1225, 1235 (W.D. Okla. 2021). But *BNSF Railway* is distinguishable in two key respects.

First, the plaintiff arguing against *Colorado River* abstention in *BNSF Railway* contended that the state administrative agency—the Oklahoma Corporation Commission

---

[5] Citations to the parties' pleadings reference the ECF file-stamped page number at the top of each page.

("OCC")—was proceeding in a "legislative," rather than a "judicial," capacity. *See id.* The plaintiff acknowledged that the OCC "sometimes acts in a judicial capacity when exercising its 'dispute-settling function.'" Pl.'s Mot. for Reconsideration, *BNSF Railway Co. v. City of Moore, Okla.*, Case No. CIV-20-714-J [Doc. No. 14] (W.D. Okla. Nov. 20, 2020) at 4 (quoting *Monson v. State ex rel. Okla. Corp. Comm'n*, 673 P.2d 839, 842 (Okla. 1983)). However, in *BNSF Railway*, "the OCC's authority to issue orders regarding railroad crossings and cost allocations [was] a 'matter of regulation'—a legislative function." *Id.* (quoting *Chicago, R.I. & P.R. Co. v. State*, 225 P.2d 363, 368 (Okla. 1950)). Here, although the parties do not directly address the capacity in which the OMVC proceeds, the Court concludes it is proceeding in a judicial, rather than a legislative, capacity. Indeed, the OMVC proceeding will "enforce[] liabilities as they stand on present or past facts," not "look[] to the future and change[] existing conditions by making a new rule to be applied thereafter," as was the case in *BNSF Railway*. New *Orleans Pub. Serv., Inc.*, 491 U.S. 350, 370-71 (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908)).[6]

Second, the court's conclusion in *BNSF Railway* was premised on the absence of "any authority . . . applying the *Colorado River* doctrine when the state proceedings are occurring within a regulatory body rather than a state district or appellate court." *BNSF Railway*, 536 F. Supp. 3d at 1235. That is no longer the case. In *Sour Grapes, LLC v. Vinum USA, LLC*, the court abstained from exercising jurisdiction due to a "parallel administrative

---

[6] The *BNSF Railway* court did not resolve the legislative vs. judicial dispute because it found that the defendant "failed to carry its burden regardless of whether the OCC – a state regulatory body – is acting in a judicial or legislative function." *BNSF Railway*, 536 F. Supp. 3d at 1235.

9

proceeding." No. 1:22-cv-203-MOC-WCM, 2024 WL 561118, at *2 (W.D.N.C. Feb. 12, 2024). The *Sour Grapes* court made no distinction between a state *administrative* proceeding and a state *court* proceeding.

Setting aside the distinctions between *BNSF Railway* and this case, the Court finds that limiting *Colorado River* abstention to state court proceedings, as opposed to state regulatory or administrative proceedings, undermines the purpose of the doctrine and ignores the reality that administrative and regulatory bodies often operate in a judicial capacity and with the availability of state-court review. *See Groom v. Kawasaki Motors Corp., U.S.A.*, 344 F. Supp. 1000, 1002 (W.D. Okla. 1972) (detailing proceedings before the OMVC and concluding that the OMVC proceeding at issue "was conducted in a judicial capacity"); *see also* M&N Mot. at 6 (noting that "timely and adequate state court review of any OMVC decision is available to American Honda under Oklahoma's Administrative Procedures Act" and quoting applicable Oklahoma statutory provisions).[7]

At its core, *Colorado River* "rests on a desire for judicial economy, not [] constitutional concerns about federal-state comity . . . ." *Rienhardt*, 164 F.3d at 1302. As will be discussed below, this is a case involving a technical question under the Oklahoma Motor Vehicle Code, its interplay with the Dealer Agreement, and the way in which American Honda attempts to exercise its right of first refusal. It could very well be argued

---

[7] The Court's conclusion is supported by the OMVC's recent order in the OMVC proceeding, in which it denied in part American Honda's motion to dismiss the proceeding. *See* M&N Notice of Supp. Auth., Ex. 1 [Doc. No. 18-1]. The OMVC concluded that it has the authority to determine whether it should "fine, suspend, or revoke [American] Honda's license for its actions surrounding the proposed buy/sell of M&N Dealerships, including those actions related to the exercise of its Right of First Refusal." *Id.* at 9.

10

that the OMVC, due to its expertise and the public policy concerns at issue, is particularly well-situated to answer such questions.[8] In sum, the Court finds the distinction between a state court and state administrative or regulatory proceeding unpersuasive in a case involving an administrative body with expertise that proceeds in a judicial capacity. This case and the OMVC proceeding are, therefore, parallel.

    **B.**    **Exceptional circumstances warrant abstention.**

Having found that the OMVC proceeding and this case are parallel, the Court turns its analysis to whether "exceptional circumstances" warrant abstention. The Tenth Circuit has set forth eight factors courts should consider in determining whether "exceptional circumstances" exist:

1. the possibility that one of the two courts has exercised jurisdiction over property

2. the inconvenience from litigating in the federal forum

3. the avoidance of piecemeal litigation

---

[8] On this point, the Court notes the absence of any judicial guidance on the scope and operation of § 565(B) under circumstances like the present. In fact, the Court's own Westlaw search revealed no judicial decisions even citing (not to mention providing any sort of in-depth analysis of) § 565(B). As M&N discusses in its Motion, "[t]he exercise of the right of first refusal here, including whether American Honda's actions constitute dishonest, unreasonable, or unfair dealing, is an unresolved question of state law bearing on important public policy and complex matters of statewide concern in need of a coherent application." M&N Mot. at 8; *see also* M&N Notice of Supp. Auth., Ex. 1 at 4 ("More specifically, the law is silent regarding whether a licensed manufacturer exercising the Right of First Refusal to purchase a dealership holding its franchise may also purchase the assets and associated real property of dealerships for franchises different than that of the purchasing manufacturer."). Under these circumstances, the Court finds that allowing the OMVC and Oklahoma state courts the first chance to opine on a state statute that is "importan[t] to the health, safety and welfare of [Oklahoma's] citizens" is the most prudent course of action. *See Semke v. State ex rel. Okla. Motor Vehicle Comm'n*, 465 P.2d 441, 445-46 (Okla. 1970).

    4. the sequence in which the courts obtained jurisdiction

    5. the "vexatious or reactive nature" of either case

    6. the applicability of federal law

    7. the potential for the state-court action to provide an effective remedy for the federal plaintiff

    8. the possibility of forum shopping.

*Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1121-22 (10th Cir. 2018) (citing *Fox*, 16 F.3d at 1082). This eight-factor list is not a "mechanical checklist," but instead "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Fox*, 16 F.3d at 1082 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). And "[n]o single factor is dispositive." *Id.*

    The parties appear to agree that factors one, two, five, and eight are either inapplicable or do not favor one party over the other. The Court agrees and, therefore, addresses factors three, four, six, and seven in turn.

    **1.    Factor Three: The avoidance of piecemeal litigation**

    The avoidance of piecemeal litigation "is at the core of the *Colorado River* doctrine." *D.A. Osguthorpe Family P'ship*, 705 F.3d at 1233. Piecemeal litigation "occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Northstar Mgmt., Inc.*, 2022 WL 20814864, at *3 (quoting *THI of N.M. at Hobbs Ctr., LLC v. Patton*, 851 F. Supp. 2d 1281, 1290 (D.N.M. 2011)). "Concerns about piecemeal litigation should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora." *Id.*

12

Upon consideration, the Court finds this factor weighs in favor of abstention. The possibility of piecemeal litigation in this case, and thus differing results based on the same transaction, is real. It is certainly possible that the OMVC and this Court may reach differing interpretations of the Dealer Agreement and § 565(B). Such a result would lead to conflicting rights and obligations and, importantly, would inject more confusion into a situation needing clarity.[9]

### 2. Factor Four: The sequence in which the tribunals obtained jurisdiction

American Honda filed this case shortly before M&N initiated the OMVC proceeding, but "the proceedings were [commenced] at virtually the same time." *Id.* at *4. Further, the proceedings are at nearly identical stages. *See id.* Although American Honda seems to argue that this factor is "not at issue," *see* American Honda Resp. at 19, the Court disagrees. Here, "where the parties and claims are substantially identical, the Court deems this factor to weigh in favor of" abstention. *Id.*

### 3. Factor Six: The applicability of federal law

The parties do not directly address this factor, but, to complete a thorough analysis, the Court will do so. In this case, American Honda seeks a declaratory judgment setting

---

[9] American Honda argues this case is far more expansive than the OMVC proceeding, as the Complaint here includes two breach of contract claims—one seeking specific performance and one for damages—on top of its request for a declaratory judgment. However, the Court agrees with M&N that the contract claims appear wholly dependent on the adoption of American Honda's advanced interpretation of the Dealer Agreement and § 565(B). If, as M&N argues, American Honda's exercising its right of first refusal in this case runs afoul of § 565, its contract claims necessarily fail. As M&N notes, "the question is whether American Honda can force a separate sale of the 6th Avenue Honda dealership, leaving [M&N] with two dealerships worth substantially less." *See* M&N Reply at 2.

forth the parties' respective rights and obligations under the Dealer Agreement and Okla. Stat. tit. 47, § 565(B). American Honda also brings two breach of contract claims—one seeking specific performance and one seeking damages. State law governs interpretation of the Dealer Agreement and the parties' rights and obligations under Okla. Stat. tit. 47, § 565(B), as well as American Honda's secondary contract claims. Therefore, this factor weighs in favor of abstention.

### 4. Factor Seven: The potential for the OMVC proceeding to provide an effective remedy for the federal plaintiff

American Honda contends this action is "more expansive" than the OMVC proceeding because the OMVC has no authority to "award damages" or "award specific performance as requested by American Honda." American Honda Resp. at 20. Further, American Honda argues that M&N's claim that this dispute is only "an interpretation of the Motor Vehicle Act is simply incorrect," as the "principal question at issue here—whether [M&N] can thwart [American Honda's statutory right of first refusal] by attempting to sell its dealership as part of a package deal—is not one of those enumerated conditions [in Okla. Stat. tit. 47, § 565(B)] and is not addressed in the statute at all." *Id.*

M&N, on the other hand, argues that this case is not more expansive than the OMVC proceeding "just because American Honda included claims for injunctive relief and damages." M&N Reply at 10. Instead, M&N continues, those are "contingent issues resolved in the wake of the [right of first refusal] question. Everything becomes res judicata after the determination of whether American Honda has properly exercised its [right of first refusal]." *Id.* Last, M&N contends that the question of "whether American Honda's attempt

14

to separate the Honda dealership from the Hyundai and CDJR dealerships is a materially different agreement than M&N [] accepted [] is within the [right of first refusal] provision in the Motor Vehicle Code." *Id.* (citing Okla. Stat. tit. 47, § 565(B)(2)).

Upon consideration, the Court finds that the OMVC proceeding provides an effective remedy for American Honda. This dispute, at its core, hinges on whether American Honda has exercised its right of first refusal in compliance with Okla. Stat. tit. 47, § 565(B). American Honda frames the dispute as follows: "This action involves a narrow question of law involving American Honda's rights under an express contractual right of refusal." Compl., ¶ 5. But American Honda's exercise of its right of first refusal contained in the Dealer Agreement must comport with Okla. Stat. tit. 47, § 565. Determining whether American Honda may exercise its right of first refusal by separating 6th Avenue Honda from the package that M&N agreed to will, by and large, resolve this case. The Court is confident that, should any ancillary issues remain, they may be resolved in an efficient manner. Therefore, this factor weighs in favor of abstention.

### 5. Balance of the factors

"Of paramount importance to the Court is the need to avoid piecemeal litigation." *Northstar Mgmt., Inc.*, 2022 WL 20814864, at *4. Upon weighing the relevant factors set forth in *Wakaya Perfection, LLC*, the Court concludes the factors weigh in favor of abstention.

**II.    Alternatively, even if abstention were improper pursuant to *Colorado River*, the Court would stay this case pursuant to its inherent discretion.**

Even if abstention were improper pursuant to *Colorado River*, the Court would exercise its inherent discretion to stay this case. *See id.* at *5; *see also Kimery v. Broken Arrow Pub. Schs.*, No. 11-CV-0249-CVE-PJC, 2011 WL 2912696, at *4 (N.D. Okla. July 18, 2011) ("In addition to abstention doctrines, district courts also have a more general discretion to defer proceedings pending an outcome in another forum."); *Cantu Servs., Inc.*, 2016 WL 11248521, at *4 n.7 ("[T]he Court finds that if Colorado River proves to be inapplicable, in exercising its discretion and inherent power, it would stay these proceedings pending a decision on the consolidated appeal."). *Colorado River* aside, the Court finds that the prudent course of action is to stay this case until the OMVC proceeding has been fully and finally adjudicated. The Court sees no reason for the parties to expend time and resources litigating this matter while the OMVC—a body that possesses specialized expertise—is simultaneously considering the same issues. Therefore, even if abstention were improper under *Colorado River*, the Court exercises its inherent discretion to stay this case pending final resolution of the OMVC proceeding.[10]

---

[10] Although only briefly mentioned by M&N in a footnote, *see* M&N Mot. at 8 n.3, this reasoning also supports application of the primary jurisdiction doctrine. *See Distrigas of Mass. Corp. v. Boston Gas Co.*, 693 F.2d 1113, 1117 (1st Cir. 1982) (invoking the primary jurisdiction doctrine *sua sponte* and noting that its invocation is not waived by failure of the parties to argue it). The purpose of the primary jurisdiction doctrine is "'to allow an agency to pass on issues within its particular area of expertise before returning jurisdiction to the federal district court for final resolution of the case.'" *See TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238 (10th Cir. 2007) (quoting *Crystal Clear Commc'ns, Inc. v. Southwestern Bell Tel. Co.*, 415 F.3d 1171, 1179 (10th Cir. 2005)). Within the Tenth Circuit, a district court may properly invoke the doctrine of primary jurisdiction if "the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency." *See id.* at 1239

**CONCLUSION**

For these reasons, M&N's Motion to Dismiss or Stay [Doc. No. 10] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court declines to dismiss this case pursuant to *Burford* but will instead abstain pursuant to *Colorado River*. Alternatively, even if abstention were improper pursuant to *Colorado River*, the Court would exercise its inherent discretionary authority to stay this case pending a final resolution in the OMVC proceeding.

**IT IS THEREFORE ORDERED** that this case is **STAYED** until the OMVC proceeding is fully and finally adjudicated. The Clerk of Court is directed to administratively close this case until further order of the Court.

**IT IS FURTHER ORDERED** that the parties shall file a joint notice with the Court within **21 days** of the OMVC proceeding being fully and finally adjudicated so that a determination can be made as to what issues, if any, remain for consideration in this case.

---

(internal quotation omitted). The decision to invoke the doctrine is discretionary, and should be made on a case-by-case basis after considering "whether 'the reasons for the existence of the doctrine are present and whether the purposes it serves (i.e., uniformity and resort to administrative expertise) will be aided by its application in the particular litigation.'" *See id.* (quoting *United States v. W. Pac. R.R.*, 352 U.S. 59, 64 (1956)).

Here, the adjudication of American Honda's claims necessarily involves interpretation and application of Okla. Stat. tit. 47, § 565(B)—tasks for which the OMVC (and, more accurately, its staff and administrative law judges) has experience and expertise. Moreover, the OMVC may "be instrumental in providing the detailed factual analysis and findings that this Court is ill-equipped to perform in the context of a civil action for damages." *Cimarron Tele. Co., Inc. v. Sw. Bell Tele. Co.*, No. CIV-11-884-D, 2012 WL 3679317, at *3 (W.D. Okla. Aug. 27, 2012). Therefore, as another alternative basis to stay the case pending final resolution of the OMVC proceedings, the Court finds that "the purposes served by the doctrine of primary jurisdiction – uniformity and resort to agency expertise – warrant the application of the doctrine under the circumstances." *Id.*

Alternatively, American Honda may file a notice of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) or a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).

**IT IS SO ORDERED** this 25th day of July, 2024.

TIMOTHY D. DeGIUSTI
Chief United States District Judge